530 A.2d 1381

**In the Interest of R.M.R.**

**Appeal of Kenneth E. DeLONG.**

Superior Court of Pennsylvania.

Argued June 10, 1987.

Filed Sept. 18, 1987.

Ambrose R. Campana, Williamsport, for appellant.

Before CIRILLO, President Judge, OLSZEWSKI and HESTER, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Snyder County, Juvenile Division, upholding an agency determination of child sexual abuse.

R.M.R. was born in December of 1980 and is the child of Sherry Ryan and appellant Kenneth DeLong. The child resides with his maternal grandparents, Henry and Dorothy Royer. On April 1, 1985, Children & Youth Services of Snyder County ("CYS") received a report that R.M.R. was being sexually abused when in the custody of his father. At the time, DeLong was attempting to gain custody of his child. A CYS caseworker, James Rinck, met with R.M.R. on April 2 and 3 and concluded that the allegations were substantiated.

On April 9, 1985, the Family Division of the Court of Common Pleas suspended DeLong's visitation rights. The court also ordered CYS to investigate the charges of abuse.

On May 22, 1985, CYS filed a child Protective Services investigation report stating that DeLong had sexually abused his child. Pursuant to the provisions of the Child Protective Services Law, 11 P.S. §§ 2201–2224, this report was an "Indicated report." The Act defines such a report as one "made pursuant to this act if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation, or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare." 11 P.S. § 2203.

The Act also provides for "founded" and "unfounded" reports. A founded report is "a report made pursuant to this act if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused." An unfounded report is "any report made pursuant to this act unless the report is a 'founded report' or unless an investigation by the appropriate child protective

service determines that the report is an 'indicated report.' " *Id.* § 2203.

The Act also provides that the subject of a report may at any time request the agency to expunge its records on the grounds of inaccuracy. *See id.* § 2215(d). The statute defines expunge as "to strike out or obliterate entirely so that the expunged information may not be stored, identified, or later recovered by any means mechanical, electronic or otherwise." *Id.* § 2203.

DeLong later made such a request but on April 30, 1986, his petition was denied. On May 5, 1986, he filed an appeal of this decision to the appropriate administrative agency. While DeLong's appeal was pending, CYS filed a petition to initiate proceedings in juvenile court.

At the start of the hearing in juvenile court, appellant's attorney, Ambrose Campana, objected, claiming that the court lacked jurisdiction. This exchange ensued:

MR. CAMPANA: Your Honor, I would like to place my objection to these proceedings on the record. We're proceeding under the child protective services act, as I understand it, for the purpose of determining whether or not the report of child abuse filed with this county's family and children's welfare service in April of 1985, is a, quote, founded report as defined by the child protective services act. And additionally if there is a founded report that this Court make a finding as to who the alleged child abuser is.

I object to these proceedings, Your Honor, because I don't think that the child protective services act encompasses jurisdiction of that sort. Additionally under the child protective services act a hearing is presently scheduled in Harrisburg for July of 1986, upon Kenneth DeLong's, the father in this case, request for a hearing to expunge a record that was filed against him on—in these circumstances. The report that he's asking to be expunged is an indicated report of child abuse perpetrated by him upon his minor son; and for those reasons, Your

Honor, I place my objection on the record to those proceedings.

THE COURT: Do you have a position as to how the Court is to determine a founded report since the definition includes a judicial adjudication, other than proceeding such as those initiated today?

MR. CAMPANA: No, Your Honor, I do not.

THE COURT: Thank you.

MR. CAMPANA: Apparently the act indicates a judicial determination and, of course, that's only by a judge. And I can't—I cannot argue, Your Honor. I think that the Court's authority doesn't extend beyond the definition of founded report that was just read by the Court from the child protective services act.

CYS responded that it was not proceeding under the Child Protective Services Act but under the Juvenile Act, 42 Pa.C.S. §§ 6331 *et seq.*, though it was not requesting a determination of dependency or delinquency. The court did not resolve this issue but allowed the parties to proceed.

At the hearing, James Rinck of CYS and Dr. Robyn E. Johns, a clinical psychologist who had examined the child, both testified that they believed R.M.R. had been sexually abused. On June 30, 1986, the court issued an order substantiating the allegations of abuse. The trial court's order denying DeLong's motion for post-trial relief stated that appellant DeLong was not a party to the action and had no standing to challenge the result. The court then wrote, assuming that DeLong does have the requisite standing, his motions are denied. DeLong then appealed to this court.

On July 1, 1986, CYS changed the original "indicated" report to a "founded" report. Also around this same time, DeLong's appeal of the denial of his expungement request was heard by a hearing officer of the Department of Public Welfare ("DPW"). DPW refused to expunge what by then was a "founded" report of child abuse.

Appellant presents two issues for our review: (1) whether the court of common pleas properly exercised jurisdiction

over this matter; and (2) whether the court committed reversible error by improperly admitting hearsay evidence. Because of our disposition of this case, we need not address these issues separately.

Appellant claims that the court of common pleas lacked subject matter jurisdiction over this case. He states that the Child Protective Services Act ("CPSA"), 11 P.S. § 2201 *et seq.*, defines a founded report as a report made after a judicial adjudication of child abuse. He argues that this provision means a judicial adjudication pursuant to a statute other than the CPSA. DeLong asserts that the CPSA does not provide an independent means to adjudicate child abuse.

Appellee CYS disagrees. It argues that the Act should be construed to allow the appropriate agency to request an adjudication of child abuse from a court. It claims that the CPSA enlarges the jurisdiction of our juvenile courts so that they may now make determinations of dependency, delinquency and child abuse.

The trial court apparently adopted still another interpretation. The judge's exchange with appellant's counsel indicates that he believes that the CPSA itself provides for judicial determinations of child abuse.

Initially, we note that the appellee's interpretation of the CPSA has already been rejected by this court. In *In re M.B.*, 356 Pa.Super. 257, 514 A.2d 599 (1986), a panel of this court held that the Juvenile Act envisions actions for dependency and delinquency but does not include a separate action for child abuse. The *M.B.* court found that the CPSA, as a separate and distinct statute, does not alter the jurisdiction of the Juvenile Act. *Id.*, 356 Pa.Superior Ct. at 262, 514 A.2d at 601. Our review of this issue leads us to a similar conclusion.

As outlined above, resolution of this appeal hinges upon statutory interpretation. In Pennsylvania, courts must follow the rules of statutory construction as provided by our legislature. *See* 1 Pa.C.S.A. § 1921. This section states:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the

General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

*Id.*

The statute in question is far from explicit on the relevant issue. Nowhere does it state that it creates an independent action for child abuse. As a result, we must examine the statutory language, structure, and goals and the probable consequences of each proffered interpretation in light of the Act's legislative and administrative history and interpretation.

Section 2202 of the Act states that its purpose is to encourage more complete reporting of suspected child abuse and to establish in each county a child protective service capable of investigating such reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve and stabilize family life wherever appropriate.

11 P.S. § 2202.

Toward that end, the Act requires that certain persons such as doctors or school teachers must report suspected

child abuse. *Id.* § 2204. The Act also establishes reporting procedures and a mechanism whereby an abused child may be taken into protective custody. *Id.* § 2208.

Under the statute, DPW must keep a central registry of all reports of child abuse. This information is to be confidential but may be used to aid law enforcement officials or local child protective service agencies, which are given specific legal and remedial duties under the law. *See id.* §§ 2214–17. A certification from DPW that an applicant has not been named in the registry is necessary whenever a person applies for a child care position. *Id.* § 2223.1.

The thrust of the Act is to create a comprehensive system for the reporting and treatment of child abuse cases. The Act explicitly provides for court proceedings in two instances. When an appropriate person takes an abused child into protective custody, the child protective service may petition the court to extend protective custody beyond the 24–hour period specified in the law. *See id.* § 2208(a)(2).

In § 2223(b), the Act states that:

(b) The court shall have the duty, upon consideration of the petition of any attorney for the child, to order a local child protective service or other agency to establish and/or implement, fully and promptly, appropriate services, treatment, and plans for a child found in need of them. Additionally, the court, upon consideration of the petition of any attorney for the child, shall have the duty to terminate or alter the conditions of any placement, temporary or permanent, of a child.

These are the only provisions in the statute which clearly establish that the Act may be used as an independent vehicle to initiate court proceedings. The abbreviated emergency procedure for protective custody under § 2208, is akin to an action for a preliminary injunction and may hardly be considered an adjudication of child abuse. It is designed to be a temporary, stopgap measure until the more time-consuming procedures under the Juvenile Act can be implemented. As 11 P.S. § 2208(c) provides:

(c) In no case shall protective custody under this act be maintained longer than 72 hours without a detention hearing. If at the detention hearing it is determined that protective custody shall be continued, the child protective services agency shall, within 48 hours file a petition with the court under the Juvenile Act.

Similarly, § 2223(b) deals with children in need of social services and/or treatment. The court may feel that the child and his family need help but there may exist insufficient evidence to prove that a particular individual has abused the youngster. If a court may order services only when abuse has been proven, the Act will be unable to accomplish its remedial purposes. The agency will be foreclosed from intervening before a situation reaches the crisis stage and cannot be resolved absent legal proceedings. This is contrary to the express purpose of the statute: "to preserve and stabilize family life wherever appropriate." *Id.* § 2202.

Other sections of the Act may plausibly be interpreted as creating an action for child abuse. In § 2217(9), the Act empowers the local agency to initiate appropriate court action if the agency's offer of social services is refused by the family of an abused child.

Section 2222 provides specific procedural and evidentiary rules which must be followed "in child abuse proceedings in juvenile or family court...." This provision appears to take for granted the existence of a separate "child abuse" proceeding.

The definition of "founded" report may also be construed as lending support to the appellee's position. As previously discussed, a report is founded if there has been a judicial adjudication of child abuse. Logically, there must be some means to make that adjudication. Otherwise, the legislature provided for a report which cannot be made. We will not interpret a statute in an absurd or unreasonable manner. *Valley Forge Industries v. Armand Constr., Inc.,* 38 Pa.Commw. 603, 606, 394 A.2d 677, 678 (1978). *See also* 1 Pa.C.S.A. § 1922(1).

Section 2223(a) of the statute states that "when a proceeding has been initiated alleging child abuse," the court must appoint a guardian ad litem for the child. Prior to its amendment in 1982, this section read, "when a proceeding has been initiated *arising out of* child abuse" (emphasis added). This difference is significant. Previously, the statutory language contemplated that the relevant action need result only from an incident of child abuse. It did not specify what the proceedings would entail. As long as child abuse was involved, the statute applied in actions brought under the Protection from Abuse Act, 35 Pa.C.S.A. § 10182, criminal abuse or dependency proceedings under the Juvenile Act, 42 Pa.C.S.A. § 6341.

For the amended section to apply, the complainant must *allege* child abuse. This envisions an action wherein the complaint may contain a specific enumeration of this offense.

Viewed in a vacuum, the Act intimates that a specific, independent action for child abuse is within its aegis. But our analysis does not take place in a vacuum. Section 2223's direction that child abuse must be specifically alleged is actually consistent with a finding that the Act does not permit an independent action for abuse. If such an action were permitted, the statute should logically read "when a proceeding has been initiated for child abuse." The Agency would not need to be reminded to specifically allege that abuse has occurred. Logically, the legislature desired such a specific allegation because the final adjudication might be for dependency. If that finding is based upon a specific allegation of abuse, DPW might be entitled to place a founded report in its files. If abuse has not been alleged, the broad finding of dependency will not support that type of report.

An action "for" a legal principle is different from an allegation of that principle. For example, a person may bring an action in tort for bad faith refusal to pay insurance benefits. Or, that person may "allege" that refusal as part of a contract action. Stating that it is sometimes permissi-

ble to make the allegation does not necessarily mean that it constitutes a cause of action. Thus, stating that child abuse may be "alleged" does not mean that there exists an independent action "for" child abuse.

This interpretation is consistent with the Act's definition of a "founded" report. The report is one made after an adjudication of child abuse. The statute does not specify that the adjudication must be made under the CPSA. It may have been pursuant to the Protection from Abuse Act, a dependency proceeding, or a criminal action. If the legislature intended that a founded report should be based on an adjudication under the CPSA, logic dictates that that eminent body would have so stated.

In light of this analysis, it is apparent that the procedural requirements of § 2222 are intended to apply when child abuse is alleged pursuant to a recognized cause of action. As discussed below, this provision resulted from the legislature's concern that the rules of evidence in a deprivation proceeding made proof difficult when the proceeding was based on child abuse. Our legislators wished to make it easier to prove dependency based upon child abuse. This is directly contrary to the position that they intended to create a separate and distinct action.

Section 2217 is susceptible to a similar interpretation. The legislature stated that the agency may take "appropriate" action. That might be an action for protective custody or one of the proceedings noted above. Basing an entirely new cause of action upon the term "appropriate", would be a rather broad statutory interpretation. Such a vague term is far too slight a peg to support such a weighty decision.

It is undeniable that the statute does not clearly spell out the existence of a child abuse action. Yet, it deals with matters of the utmost seriousness. If a person is adjudicated to have committed child abuse, his reputation will have been smeared and his good name blemished. Forever more, he will appear to the people of his community with a red letter emblazoned on his forehead. The legislature has directed that penal statutes must be strictly construed. 1

Pa.C.S.A. § 1928(b)(1). This law does not provide a penal sanction such as a prison term or a criminal record. It does provide a means for the state to destroy a man's reputation and home. Because of the importance of the interests involved, we must adhere to a strict construction of the statute. This cautions us against implying the creation of a cause of action where none has been explicitly provided.

As § 1921 directs, the consequences of each viable interpretation must be examined. If we were to hold that an action for child abuse may be brought under the Juvenile Act the procedures of that Act would govern the action. Proceedings under the Juvenile Act are initiated by the filing of a petition which sets forth the facts bringing the child within the definition of "dependent" or "delinquent". 42 Pa.C.S.A. § 6334. In order for us to find that the Juvenile Act encompasses an additional action for "child abuse" we must find that the above-cited sections have been amended by implication. We doubt that our legislature would attempt to accomplish this result in such an indirect manner as hiding the amendment in a separate statute and couching it in vague terms.

Under the Juvenile Act, a finding of dependency is often the first step before the court orders disposition of the child. 42 Pa.C.S.A. § 6338. A court order of dependency without disposition is a non-appealable interlocutory order. *Commonwealth v. Van Bashkirk*, 303 Pa.Super. 148, 152, 449 A.2d 621, 624 (1982). A court determination of child abuse without disposition would also be an interlocutory order. But the effect of the two orders is quite different. An adjudication of child abuse necessarily smears the reputation of the accused party. Though his good name will have been trampled, he will not be entitled to appeal. He will be suspended in legal limbo with no means of vindication. This is intolerable. If we allow a man's name and reputation to be destroyed via a civil proceeding, fairness dictates that he should have some further recourse.

Even this interpretation is preferable to that offered by the trial court in this case. Under the Juvenile Act, all

necessary parties receive notice of the hearing and have a right to counsel, the right to introduce witnesses, and the right of cross-examination. 42 Pa.C.S.A. § 6331 *et seq.* The trial court's order stated that the appellant was not a party to the proceeding. This is a plausible result if the CPSA is interpreted as creating a cause of action for child abuse, independent of the Juvenile Act. Apparently, the court inferred that the resulting action would concern the child and the agency and not the accused child abuser. This interpretation not only severs the accused's right to appeal, it eviscerates any rights he may have to participate in the initial adjudication. His name will be in a government file as an adjudicated child abuser but he will not have been a party to the adjudication and will have had no right to appeal the determination. He may bring an administrative action for "expungement" but he then bears the burden of proof. The term travesty is too mild to describe this situation.

The Act is very specific in most instances. Section 2208 states that if protective custody is to be maintained after the detention hearing, the agency must proceed under the Juvenile Act. *See* 11 P.S. § 2208(c). In this instance the legislature clearly specified that the Juvenile Act is controlling. It is logical to assume that if the lawmakers intended that other proceedings under the Child Abuse Act should be brought under the Juvenile Act, they would have specified this point in a manner similar to that used in § 2208.

The purpose of the Act may also be achieved without the creation of an independent action for abuse. As noted previously, the purposes are to encourage reporting of abuse, protecting children from further abuse and providing rehabilitative services. *See* 11 P.S. § 2202.

Each of these goals is attainable without resort to adjudications of child abuse. Branding someone a child abuser is not rehabilitative. It is hard to envision how a civil "child abuse" action adds anything to the overall statutory scheme. Viewing the Act without this action, the law still

provides independent means to encourage reporting and expedite protective custody.

Furthermore, the criminal law provides a means to punish child abusers and protect society from their anti-social actions. Under the Juvenile Act, the state may remove a child from a perilous home situation. The Protection from Abuse Act provides a mechanism for emergency relief in this type of case. These proceedings comprise a comprehensive scheme to combat abuse which also affords the accused the full panoply of his constitutional rights. Not only would a civil child abuse action under the CPSA fail to add to this scheme, for the reasons discussed above, it would threaten the rights of the accused person.

Also, the addition of this action would actually alter the statute's effect. Its focus is on protection of the child and the preservation of family harmony. Inclusion of an abuse action would make the statute penal in nature. Instead of protection of the child, punishment of the offender becomes paramount. This alteration is unwise and unnecessary. As noted, the criminal law and the Juvenile Code provide ample means to punish these offenders. The law anticipates that local agencies will devote their limited resources to protect children and rehabilitate offenders. Diversion of these precious resources to criminal-style prosecutions will necessarily diminish the time and money available to pursue these other, more important goals.

The legislative history of the Act supports this conclusion. In 1974, when the bill was first proposed, its sponsor, Senator Michael O'Pake, stated that the statute would aid juvenile court judges in deprivation proceedings. He stated:

> Equally important, the cries from child protective workers and juvenile court judges is that they cannot in a deprivation proceeding satisfy themselves that it was a child abuse situation, rather than an accident because, as you know, the innocent victim cannot testify. This bill would shift the burden of proof ... It would say that the battered child would be prima facie evidence of a beating,

and then the persons most logical to testify, namely the accused, in the deprivation proceeding, would be asked to come forward and respond and explain away the battering or the abuse.

. . . .

Now, that and the burden of coming forward with proof would apply only to the deprivation proceeding in juvenile court and not to the criminal proceeding, for obvious reasons.

Pa. Senate Journal 1797 (April 22, 1974).

This speech demonstrates that the abuse allegations were to be part of a deprivation proceeding in juvenile court. The bill was passed by the legislature but vetoed by Governor Shapp.

In 1975, the legislation was reintroduced in different form. The legislative debates exhibit a concern over the definition of child abuse. Nothing in the debates indicates that an additional cause of action was created. Senator DiCarlo, one of the bill's most forceful spokesman, emphasized that the new law altered the Juvenile Act only in that it expanded the availability of protective custody. He stated:

As far as his questions about the Juvenile Act, what I have said we have done is expand the protective custody section under child abuse, under the child abuse legislation in front of us, specifically setting a means test defining what an abused child is. That is spelled out very specifically, if a child is physically abused, if he is sexually attacked or molested.

Pa.Senate Journal 3001 (Oct. 15, 1975).

Senator O'Pake's 1975 statements also demonstrate that the law was intended as a supplementary aid to the provisions already in the Juvenile Act. He stated:

Mr. President, the second attack made by those who oppose the bill was that the bill is punitive rather than rehabilitative in nature. Well, anyone who reads the bill should understand that this bill applies only to Juvenile or Family court; we are not changing one iota of the law in

Criminal Court. The accused will still have all the constitutional rights that any accused has before any subsequent criminal proceeding. We are concerned about the travesties, the injustices that occur in Juvenile Court when, because of the technical rules of evidence, case after case is dismissed, and those babies are returned to those homes and the caseworkers know and the judges know, and everyone else concerned knows, that the next time that baby comes back the abuse is going to be much worse than it was the first time.

*Id.* at 291.

These comments indicate that the Act did not create any new causes of action. It was designed to protect children but still promote family harmony. Its only relation to the Juvenile Act was to make it easier to prove deprivation based on child abuse. This point is repeated throughout the debates. Nowhere is a new proceeding for child abuse mentioned. Not only do the language and structure of the Act support a finding that the Act lacks such an action, this result is buttressed by the legislative history.

In 1984, the Act was amended. It was proposed that the definition of a founded report should be narrowed to include only persons convicted of a crime involving child abuse. Opponents of the proposed amendment stated that a person placed on ARD has not been convicted of a crime but is still an adjudicated child abuser. They argued successfully that such persons should not be allowed to work with children and thus, are the proper subjects of "founded" reports. No one suggested that the Act itself provided a means to adjudicate child abuse. *See generally* Pa. House Journal at 2344–45 (Nov. 27, 1984). Yet, this would have been the appropriate time to raise the issue. If the Act had contained this mechanism, the proposed amendment would have eliminated it. But no one rose to defend its continued existence. The logical conclusion is that it had no defenders because there is no such provision.

A 1979 report to the legislature on the Act also supports this view. The report was prepared to examine problems encountered in the implementation of the Act. It stated:

Since the Juvenile Act provides no statutory basis for a judicial finding of abuse, founded cases are actually adjudicated "dependent" based on abuse per Act No. 124.

. . . .

When Act No. 124 was drafted, it was intended that the existing procedures for bringing a child within the jurisdiction of the juvenile court division would be utilized, rather than erecting a procedural superstructure for the limited purpose of formalizing the founded status of an abuse complaint.

Joint State Government Report on The Child Protective Services Law 64, 78 (January 1979).

Recognizing that this has caused confusion, the report recommends:

Place all requirements relating to court procedures for children in the Juvenile Act and revise these requirements to facilitate the processing of protective service cases. Provide full procedures for petitioning for an abuse ruling in Act No. 124. Clarify status classification for dependency rulings which are not based upon child abuse as defined in Act No. 124.

*Id.* at 82.

These proposals demonstrate that: (1) the Juvenile Act does not provide for specific adjudications of child abuse; and (2) the Child Abuse Act does not provide any mechanism to adjudicate child abuse. The report proposed that this situation should be changed.

But the report's recommendations were not adopted. It is hardly appropriate for local agencies to amend the Act by fiat, substituting a more convenient interpretation of the statute for one that was intended by the legislature.

Scholarly commentary on the Act supports our view. The Children's Rights Chronicle, in a thorough examination of the Act, stated:

Child protective services in many Pennsylvania counties, in cases of child abuse, want to ensure that the court makes a particularized finding (or adjudication) of abuse

so that the original child abuse report will be "founded." Although such language in the petition may be helpful, it is not a pre-condition for a report to be "founded." The report will be "founded" if the court makes clear that the adjudication of dependency is based on a finding of abuse. 11 P.S. § 2203. Neither the Juvenile Act nor the CPSL provides explicitly for "an adjudication of abuse pursuant to the CPSL," which is so often sought by protective services. The final adjudication is one of dependency, not abuse.

3 Children's Rights Chronicle 3 (Nov. 1984). *See also* Beatty and Woodley, *Child Molesters Need Not Apply: A History of Pennsylvania's Child Protective Services Law and Legislative Efforts to Prevent the Hiring of Abusers by Child Care Agencies*, 22 Dick.L.Rev. 669 (1985) (close examination of history and purpose of Act presents no evidence that "child abuse" action was created).

Appellee asserts that this issue has already been judicially settled in its favor in *In re M.B.*, 356 Pa.Super. 257, 514 A.2d 599 (1986). This assertion is incorrect. In *M.B.*, a petition alleging child abuse was filed against the father. The juvenile division of the court of common pleas found the allegation of abuse "unfounded" but determined that the child was dependent under the Juvenile Act. *Id.*, 356 Pa.Superior Ct. at 259, 514 A.2d at 600.

On appeal, this court reversed, holding that it violated due process to proceed under the Juvenile Act when the petition was filed under the Child Protective Services Law. The court stated:

The issues before the Court in an abuse and dependency proceeding are distinct. The proof and argument on one would not necessarily match the proof and argument for the other. In an abuse case, the evidence revolves around the alleged incident of abuse, and the decision which must be reached is whether that evidence meets the standard defined in the Child Protective Services Law.

On the other hand, a dependency proceeding focuses on whether the child at the time of the proceeding is without

proper parental care or control. Such differences manifest the unfairness inherent in allowing a child to be declared dependent after a proceeding under the Child Protective Services Law when no petition was ever filed under the Juvenile Act.

*Id.*, 356 Pa.Superior Ct. at 260, 514 A.2d at 601.

The court held that the two Acts are separate and distinct and that the Juvenile Act does not provide for a cause of action for abuse. This is hardly favorable to appellee's argument. Appellee claims that the *M.B.* court interpreted the CPSA as providing an action for child abuse. The court did nothing of the kind. It was not faced with that issue. The allegation of abuse was dismissed at the trial level. This court was in no position to approve or disapprove of the propriety of such allegations. Its holding that the trial court did not have jurisdiction under the Juvenile Code is not an implicit finding that jurisdiction was proper under the CPSA. Based on the preceding analysis, it is apparent that jurisdiction was not present under the Act because the Act does not provide an independent means to adjudicate child abuse. Nor does the Juvenile Act.

Under the Juvenile Act an allegation of child abuse must be made as part of a dependency proceeding. If the legislature is displeased with this result, it must amend the relevant statutes. This court is constrained from taking such an action by the nature of the judicial role in our governmental system. We are not the promulgator of statutory law, only its interpreter. We seek to divine the intent of the legislature and apply it in a given situation. Judges who overstep the bounds of their authority become Platonic Commissioners, a role which is anathema to our democratic system.

The order of the Court of Common Pleas of Snyder County is reversed and the Department of Public Welfare is hereby ordered to remove the founded report based on that court order which is presently in its file. Jurisdiction relinquished.