IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W. W.,                             :
          Petitioner              :
                                   :        **SEALED CASE**
          v.                      :        No. 1410 C.D. 2023
                                   :        Submitted: December 9, 2024
Department of Human Services,      :
          Respondent              :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                 FILED:  February 13, 2025

          W. W. (Grandmother) petitions for review of an adjudication of the
Department of Human Services (Department), Bureau of Hearings and Appeals
(Bureau) that denied Grandmother's request to expunge a founded report naming her
as a perpetrator of child abuse from the ChildLine and Abuse Registry (ChildLine).[1]
In doing so, the Bureau adopted the recommendation of the Department's
Administrative Law Judge (ALJ) that the founded report of Grandmother's child
abuse by omission should remain in ChildLine.  Specifically, Grandmother failed to
protect her granddaughter, C.S. (Child), from sexual abuse by J.W. (Step-
Grandfather), Grandmother's husband.  On appeal, Grandmother argues that the
dependency proceeding did not provide Grandmother due process and, thus, could

---

[1] ChildLine, a unit within the Department, operates a statewide system for receiving reports of
suspected child abuse; refers the reports for investigation; and maintains the reports for reference.
55 Pa. Code §3490.4.

not serve as the basis of a founded report of child abuse by Grandmother.[2]  After review, we vacate and remand for further proceedings.

## Background

On June 6, 2020, the County Children and Youth Services Agency (CYS) received a report from the Pennsylvania State Police of suspected sexual abuse of Child, aged 14, whose legal guardian was Grandmother.  In response, CYS began an investigation by interviewing Child, C.W. (Mother), and Grandmother. Step-Grandfather declined to be interviewed.  Shortly thereafter, before CYS completed its investigation, the court of common pleas conducted a dependency hearing.

At the dependency hearing on June 23, 2020, a CYS caseworker (Caseworker) testified that Child told Mother that Step-Grandfather had touched her inappropriately.  Mother contacted the Pennsylvania State Police.  Child told Caseworker that Grandmother read Child's diary, wherein Child wrote about the touching, and Child brought up Step-Grandfather's touching at a counseling session with Grandmother.  Grandmother did not further discuss the matter with Child and did not report the abuse.  Caseworker acknowledged that the counselor also did not report the alleged abuse of Child.

Child testified.  She stated that she lived with Grandmother and Step-Grandfather in two different houses.  At the first house, Step-Grandfather began touching her sexually when she was approximately nine years old.  He would lay on the bed, remove her underwear, and lick her genitalia. This was repeated every few weeks.  When Child was 12 years old, they moved to the second house, where the abuse continued.  Child stated that Step-Grandfather would walk up to her and "grab

---

[2] Grandmother does not raise the issue of whether the dependency proceeding established that Step-Grandfather was a perpetrator of child sex abuse.

[her] butt or [her] boobs." Notes of Testimony (N.T.), 6/23/2020, at 26; Reproduced Record at 101a (R.R.___). Recently, Step-Grandfather told Child that he would "pay [her] $20 to $25 if [she would] let him touch [her]." N.T., 6/23/2020, at 27; R.R. 102a. Child testified that Grandmother was not in the house when the abuse occurred.

Child explained that she did not tell anyone about Step-Grandfather's abuse because she was scared and did not know what would happen. At a counseling session with Grandmother, sometime in 2019, Child disclosed Step-Grandfather's abuse. Child testified that Grandmother did not believe her, and, thus, Grandmother did not call the police or contact CYS. Child testified that in June of 2020, she told Mother about the abuse after she got into a fight with Grandmother.

Child testified that she had written in her diary that Step-Grandfather had raped her. Child explained that she had used the word "raped" because she thought that word applied to Step-Grandfather's conduct; she did not know it meant sexual intercourse.

Grandmother did not testify at the dependency hearing, and Step-Grandfather was not permitted to either testify or be present at the hearing.

The common pleas court adjudicated Child a dependent and ordered her to be removed from the home of Grandmother and Step-Grandfather. The court explained:

> [T]he victim child . . . disclosed at an interview at the Pennsylvania State Police Station[] that at the age of 9[,] she was sexually abused, naming [Step-Grandfather] as the alleged perpetrator. [Step-Grandfather] would make her lay on a bed and touch her . . . when they were alone in the house. [Step-Grandfather] would also touch her buttocks and breasts when [Grandmother] was in another room. [Child] stated the abuse occurred more than one time, stating it would occur about every

3

week or every other week. [Child] did state that while the abuse was happening[, Step-Grandfather] would say it was "our secret." [Child] has previously disclosed this information to [Grandmother], who said [Child] was lying. [Grandmother] failed to take any steps to protect [Child] after [Child] disclosed the abuse to [Grandmother].

Order of Adjudication and Disposition at 3, ¶15; Certified Record at 132 (C.R. __).

Thereafter, the Department notified Grandmother that she had been named as a perpetrator in an indicated report of child abuse maintained in the ChildLine Registry. On October 9, 2020, Grandmother requested a hearing to expunge that report. Subsequently, on November 19, 2020, the Department notified Grandmother that the indicated report had been revised to a founded report.

On November 1, 2021, an ALJ convened a hearing on Grandmother's request to expunge the report naming her as a perpetrator of child abuse. The ALJ announced that the issue was whether the facts found at the dependency proceeding matched the statements of child abuse recited in the founded report. Counsel for Grandmother stated that his client had not been notified that the report had been changed from indicated to founded. CYS responded that notice of the change of status is the responsibility of ChildLine. Grandmother requested a continuance so that she could prepare her defense to a founded report of abuse, which had not been anticipated. The ALJ granted a continuance.

The hearing reconvened on April 6, 2022. Grandmother's counsel argued that the dependency proceeding was inadequate, as a matter of due process, to establish child abuse by Grandmother. At the dependency hearing, CYS represented to the court that the alleged abuse was still under investigation. Further, the alleged active perpetrator was not allowed to be present, which led all participants to believe that the issue of child abuse by either Grandmother or Step-

4

Grandfather could not be adjudicated. Because a finding of abuse was "not necessary in a dependency hearing," Grandmother, and her attorney at the time, "were sandbagged into thinking that [they were there] for a dependency hearing," not to decide whether child abuse had occurred. N.T., 4/6/2022, at 44; R.R. 45a.

CYS responded that Grandmother was lodging a collateral attack on the common pleas court's dependency adjudication, which found, as fact, that Child had been abused. Grandmother should have appealed the court's dependency adjudication if she wanted to challenge that finding.

Counsel for Grandmother next argued that nothing changed between the issuance of the indicated report on July 23, 2020, and October 13, 2020, when the founded report was entered into the registry. CYS should be estopped from changing the report, which it did solely because Grandmother appealed the indicated report. Grandmother "was never provided with the opportunity – with a real opportunity to challenge the evidence that [sic] upon which the allegation of abuse has been founded by [] CYS." N.T., 4/6/2022, at 53; R.R. 54a.

The ALJ then received evidence from CYS. A program specialist (Program Specialist) testified and identified CYS exhibits for entry into the record. Exhibit C-1 was the June 6, 2020, report of suspected child abuse, and Exhibit C-2 was the indicated report of child abuse that named Grandmother as a perpetrator, by omission, for not protecting Child. Exhibit C-3 was the report that changed the indicated report of abuse by Grandmother to a founded report. Exhibit C-4 was Caseworker's summary of Grandmother's interview. Exhibit C-5 was the report issued by CYS to law enforcement. Exhibit C-8 was the letter sent to Child's parents and to Grandmother and Step-Grandfather, stating, *inter alia*, that Grandmother was named as an alleged perpetrator of abuse. Finally, Exhibit C-9 was the letter from

5

ChildLine to Grandmother stating that the indicated report of child abuse had been changed to founded.

The parties stipulated to the admission of Exhibits C-6, a transcript of the dependency hearing, and C-7, the order of dependency. CYS's remaining exhibits were admitted.

Program Specialist testified that she attended the dependency hearing, where the testimony established Grandmother's abuse by omission. Program Specialist confirmed that CYS completed its investigation by using the common pleas court's findings in the dependency proceeding.

On cross-examination, Program Specialist explained that Exhibit C-2 named Grandmother in an indicated report because "ChildLine does not prefer that you send them as founded right away. They prefer that you send them as indicated, and then later on update them to founded, due to appeals." N.T., 4/6/2022, at 81; R.R. 57a. She stated that "if a founded report is appealed, it's more difficult for [ChildLine] to redact and make it an indicated report if you [do not send it] as indicated and then upgrade to founded." *Id*. She conceded that CYS did not do any investigation between the filing of the indicated report and its revision to founded. She explained that CYS waits to see if the dependency order is appealed before changing the status of the report. It was a coincidence that the report was changed to founded after Grandmother filed her appeal of the indicated report of child abuse.

The ALJ issued a recommendation that Grandmother's appeal be denied. In reaching her determination, the ALJ made 26 findings of fact, including:

> 12. At the time of the June 23, 2020 dependency hearing, [] Child testified that, despite [Grandmother] reading [] Child's diary entries and attending a counseling session in which []Child documented [Step-Grandfather] inappropriately touching []

6

Child, [Grandmother] did not believe [] Child and took no action regarding the incidents of inappropriate touching. []

. . . .

14. Following the June 23, 2020 dependency hearing, Judge [] issued an Order of Adjudication and Disposition, adjudicating [] Child dependent based on the following:

> [T]he victim child . . . disclosed at an interview at the Pennsylvania State Police Station[] that at the age of 9[,] she was sexually abused, naming her [] [Step-Grandfather], [] as the alleged perpetrator. [Step-Grandfather] would make her lay on a bed and touch her and lick her vagina when they were alone in the house. [Step-Grandfather] would also touch her buttocks and breasts when [Grandmother] was in another room. [Child] stated the abuse occurred more than one time, stating it would occur about every week or every other week. [Child] did state that while the abuse was happening[, Step-Grandfather] would say it was "our secret." [Child] has previously disclosed this information to [Grandmother], who said [Child] was lying. [Grandmother] failed to take any steps to protect [Child] after [Child] disclosed the abuse to [Grandmother].

ALJ Adjudication at 3-6; C.R. 163-66.

The ALJ's recommended adjudication next set forth the following applicable law:

> [T]he Department must establish by substantial evidence in this case the dependency adjudication constitutes "a judicial adjudication based on a finding [Child] has been abused and the [dependency adjudication] involves the same factual circumstances involved in the allegation of child abuse." 23 Pa. C.S. §6303(a). Determination of whether the "same factual circumstances" exist between the dependency adjudication and the administrative appeal involves analysis of the parity of the 1) subject child; 2) perpetrator; 3) nature of abuse or abusive act; and 4) dates of abuse. Based on the alleged dates of abuse and

7

per [Bureau] policy, the Child Protective Services Law[3] . . . as it existed before the December 31, 2014 amendment . . . and as it existed after the December 31, 2014 amendment . . . applies to analysis of this matter.

ALJ Adjudication at 18; C.R. 178. Grandmother met the definition of a "perpetrator" because Grandmother was Child's legal guardian and resided in the same home as Child during the period of the abuse.

The ALJ explained that the founded report was based on the facts found by the court in the dependency proceeding: Step-Grandfather sexually abused Child and Grandmother failed to protect Child after the abuse was disclosed to Grandmother. The ALJ concluded that the founded report of child abuse by Grandmother should remain in the ChildLine Registry.

The Bureau adopted the ALJ's recommendation in its entirety. Grandmother appealed to this Court.[4] Thereafter, on December 14, 2023, the Department denied Grandmother's request for reconsideration.

## Issues on Appeal

On appeal, Grandmother raises three issues. First, she argues that her due process rights guaranteed by the United States and Pennsylvania Constitutions were not observed in either the dependency or the expunction proceeding. Second, she argues that CYS was estopped from using the dependency proceeding to change its report of child abuse from indicated to founded. Third, she argues that the record does not support the conclusion that Grandmother did not protect Child from abuse when she was not informed of Child's claim until after the touching had ended.

---

[3] 23 Pa. C.S. §§6301-6388.

[4] This Court's review determines whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence. *F.R. v. Department of Public Welfare*, 4 A.3d 779, 782 n.7 (Pa. Cmwlth. 2010).

## The Child Protective Services Law

There are two different types of child abuse reports that are maintained by the ChildLine Registry: indicated and founded.

The Child Protective Services Law defines an indicated report as follows:

> (1) Subject to paragraphs (2) and (3), a report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following:
>
> > (i) Available medical evidence.
> >
> > (ii) The child protective service investigation.
> >
> > (iii) An admission of the acts of abuse by the perpetrator.
>
> (2) A report may be indicated under paragraph (1)(i) or (ii) for any child who is the victim of child abuse, regardless of the number of alleged perpetrators.
>
> (3) A report may be indicated under paragraph (1)(i) or (ii) listing the perpetrator as "unknown" if substantial evidence of abuse by a perpetrator exists, but the department or county agency is unable to identify the specific perpetrator.

23 Pa. C.S. §6303(a). In sum, an "indicated" report is made by the Department or CYS on the basis of its investigation that there is "substantial evidence" of child abuse by a perpetrator.

By contrast, the Child Protective Services Law authorizes a founded report of child abuse in the following circumstances:

> A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:
>
> (1) *There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse.* The judicial adjudication may include any of the following:

(i) The entry of a plea of guilty or nolo contendere.

(ii) A finding of guilt to a criminal charge.

(iii) *A finding of dependency under 42 Pa. C.S. §6341 (relating to adjudication) if the court has entered a finding that a child who is the subject of the report has been abused*.

(iv) A finding of delinquency under 42 Pa. C.S. §6341 if the court has entered a finding that the child who is the subject of the report has been abused by the child who was found to be delinquent.

(2) There has been an acceptance into an accelerated rehabilitative disposition program and the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse.

23 Pa. C.S. §6303(a) (emphasis added). In sum, a founded report is maintained in the ChildLine Registry where a court of law has made a finding of child abuse.

A perpetrator named in an indicated report may request the expunction of that report from the ChildLine Registry. Section 6341 states, in relevant part, as follows:

(a) General rule. -- Notwithstanding section 6338.1 (relating to expunction of information of perpetrator who was under 18 years of age when child abuse was committed):

. . . .

(2) *Any person named as a perpetrator*, and any school employee named, in an indicated report of child abuse *may*, within 90 days of being notified of the status of the report, request an administrative review by, or appeal and *request a hearing before, the secretary to amend or expunge an indicated report* on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter. The request shall be in writing in a manner prescribed by the department.

. . . .

10

(c.1) Founded reports.--*A person named as a perpetrator in a founded report of child abuse must provide* to the department a court order indicating that the *underlying adjudication* that formed the basis of the founded report *has been reversed or vacated.*

(c.2) *Hearing.--A person making an appeal under subsection (a)(2) or (c) shall have the right to a timely hearing to determine the merits of the appeal . . . .*

23 Pa. C.S. §6341 (emphasis added). The hearing guaranteed by Section 6341(c.2) of the Child Protective Services Law is limited to perpetrators named in an indicated report and does not apply to founded reports.

As the above-quoted language establishes, the Child Protective Services Law does not provide a mechanism by which a perpetrator can challenge a founded report of child abuse. The "effects of inclusion as a perpetrator on the statewide child abuse database are restrictions on employment and volunteer activities in schools and childcare settings, preclusions from certain types of housing and educational opportunities where clearances are required, and a prohibition from becoming a foster parent or adopting a child from foster care." *J.F. v. Department of Human Services*, 245 A.3d 658, 670-71 (Pa. 2021). These effects on an individual's privileges mean that the Department's inclusion of a perpetrator in the ChildLine database constitutes an "adjudication" under the Administrative Agency Law, 2 Pa. C.S. §101. Further, "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. §504. It follows, therefore, that the judicial proceeding used as the basis of a founded report must include "a full and fair opportunity to be heard." *J.F.*, 245 A.3d at 673. Otherwise, the adjudication, or founded report, is invalid.

11

In *J.M. v. Department of Public Welfare*, 94 A.3d 1095, 1100-01 (Pa. Cmwlth. 2014), the perpetrator asserted that he was not given reasonable notice of the dependency proceeding or an opportunity to be heard. As such, the dependency order did not support the founded report of abuse. This Court concluded the named perpetrator was required to have a "full and fair opportunity to be heard" on the founded report of child abuse. *Id*. at 1100. Because he did not have the opportunity to cross-examine all witnesses or to rebut evidence of neglect presented in the dependency proceeding, he was entitled to a full hearing before the Department on the founded report that complied with the hearing procedure required under the Administrative Agency Law.

**Analysis**
**Due Process**

In her first issue on appeal, Grandmother argues that her due process rights under the Fifth[5] and Fourteenth[6] Amendments to the United States Constitution and article I, section 1 of the Pennsylvania Constitution[7] have been violated. Grandmother asserts that she was entitled to a full evidentiary hearing to challenge the founded report, but the ALJ limited the scope of the administrative hearing to a matching of facts found in the dependency proceeding to those stated in the founded report. The ALJ presupposed that the dependency hearing afforded Grandmother due process, which was error. That hearing provided Grandmother

---

[5] U.S. CONST. amend. V. It states, in relevant part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" *Id*.

[6] U.S. CONST. amend. XIV. It states, in relevant part, that "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" *Id*.

[7] Pa. Const. art. I, §1. It states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." *Id*.

12

neither notice nor an opportunity to be heard. Step-Grandfather was not allowed to appear, which precluded calling him as a witness. Indeed, his removal from the courtroom led Grandmother to believe that the hearing would not decide whether Child was a victim of child abuse as defined in 23 Pa. C.S. §6303,[8] but whether Child was a dependent child under 42 Pa. C.S. §6302[9] and should be removed from the home. Grandmother received no notice that the dependency proceeding would

---

[8] Section 6303(b.1) states:

> The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> (1) Causing bodily injury to a child through any recent act or failure to act.
>
> . . . .
>
> (4) Causing sexual abuse or exploitation of a child through any act or failure to act.
>
> . . . .
>
> (6) Creating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act.
>
> . . . .

23 Pa. C.S. §6303(b.1).

[9] It states:

> A child who:
>
> (1) *is without proper parental care or control*, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;
>
> . . . .
>
> (8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6);
>
> . . . .

42 Pa. C.S. §6302 (emphasis added).

determine that she committed child abuse by omission. Only after the hearing concluded did Grandmother learn that her conduct was an issue.

Grandmother also argues that the ALJ's conduct of the hearing did not conform to due process. Her counsel requested leave to submit a brief to the ALJ on due process and estoppel, and the ALJ agreed to permit "post[-]hearing submissions," *i.e.*, briefs. N.T., 4/6/2022, at 94; C.R. 289.[10] In spite of that assurance, the ALJ decided the matter without the benefit of Grandmother's brief and without addressing Grandmother's due process and estoppel issues.

CYS does not respond to Grandmother's due process argument in its brief.

"As part of a dependency adjudication, a court may find a parent [or a person responsible for the child's welfare] to be the perpetrator of child abuse[] as defined by the Child Protective Services Law." *Interest of S.L.*, 202 A.3d 723, 728 (Pa. Super. 2019). A finding of child abuse requires a showing of "clear and convincing evidence," which is defined as evidence that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Interest of L.V.*, 209 A.3d 399, 417 (Pa. Super. 2019) (quoting *In re C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997)). Significantly, "[t]he issues before the [c]ourt in an abuse and dependency proceeding are distinct." *In Interest of M.B.*, 514 A.2d 599, 601 (Pa. Super. 1986). To that end, "[t]he proof and argument on one would not necessarily match the proof and argument for the other." *Id*. As the Superior Court has explained:

---

[10] The ALJ did not issue a scheduling order for the filing of post-hearing briefs or notify the parties, prior to issuing the recommended adjudication, of her intention to decide the appeal without briefs. Grandmother Brief at 13.

14

> In an abuse case, the evidence revolves around the alleged incident of abuse, and the decision which must be reached is whether that evidence meets the standard defined in the Child Protective Services Law. On the other hand, a dependency proceeding focuses on whether the child at the time of the proceeding is without proper parental care or control.

*Id*. In *Brooks-Gall v. Gall*, 840 A.2d 993, 997 (Pa. Super. 2003), the Superior Court acknowledged that dependency proceedings implicate due process.

Here, CYS filed a dependency petition to remove Child from Grandmother's home. However, that petition is not part of the agency record. Therefore, it cannot be ascertained that it alleged child abuse, as defined at 23 Pa. C.S. §6303(b.1), by Grandmother. *See In Interest of R.M.R.*, 530 A.2d 1381 (Pa. Super. 1987) (any allegation of child abuse must be set forth in the petition). It also cannot be determined that the petition gave Grandmother reasonable notice that her conduct was an issue.

Further, at the start of the hearing, the common pleas court granted the motion of CYS to have Step-Grandfather removed from the courtroom. The court did so for the stated reason that he did not have the right to participate in the dependency proceeding. N.T., 6/23/2020, at 7; R.R. 82a. By this removal, neither Step-Grandfather nor Grandmother could effectively cross-examine the testimony of any of CYS's witnesses.

Only at the conclusion of the hearing did counsel for CYS request the court to make specific findings of abuse on the part of Grandmother "for endangering [C]hild by failing to bring to the authorities or [CYS's] attention of what [C]hild disclosed." N.T., 6/23/2020, at 57; R.R. 132a. At that point, it was too late for Grandmother to present any evidence to rebut the allegations of her abuse by omission.

15

In sum, CYS did not establish that the dependency hearing gave Grandmother notice and an opportunity to be heard on whether she committed child abuse by omission. The ALJ erred in not allowing Grandmother to file a post-hearing brief prior to issuing the proposed adjudication and holding that her administrative hearing was limited to the exercise of matching the facts of the founded report to those stated in the dependency order of adjudication and disposition.

## Conclusion

For these reasons, we vacate the Department's adjudication and remand the matter to the Department for a hearing on Grandmother's request to expunge the founded report that named her as a perpetrator of child abuse by omission.[11]

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[11] Because of our resolution of Grandmother's first issue, we need not address her remaining issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W. W.,                          :
            Petitioner          :
                                :   **SEALED CASE**
    v.                          :   No. 1410 C.D. 2023
                                :
Department of Human Services,   :
            Respondent          :

# **O R D E R**

AND NOW, this 13th day of February, 2025, the adjudication of the Department of Human Services is VACATED, and the matter is remanded to the Department of Human Services for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita